# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued February 12, 2016          Decided July 8, 2016

No. 15-5030

UNITED STATES OF AMERICA,
APPELLEE

v.

TDC MANAGEMENT CORPORATION, INC., ET AL.,
APPELLANTS

Appeal from the United States District Court
for the District of Columbia
(No. 1:89-cv-01533)

*David Brian Hamilton* argued the cause for appellants. With him on the briefs was *Robert A. Gaumont*.

*Darrell C. Valdez*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief was *R. Craig Lawrence*, Assistant U.S. Attorney.

Before: SRINIVASAN and WILKINS, *Circuit Judges*, and GINSBURG, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* GINSBURG.

GINSBURG, *Senior Circuit Judge*: This dispute arises out of the Government's efforts to collect a judgment debt of nearly $1.3 million from T. Conrad Monts. The Government sought to recover the debt pursuant to the Federal Debt Collection Procedures Act (FDCPA), 28 U.S.C. § 3001 *et seq.*, by garnishing funds owed to Washington Development Group – A.R.D., Inc. (WDG), a company Monts and his wife owned as tenants by the entireties. The district court held Monts had a sufficient property interest in WDG's assets to permit garnishing them under the FDCPA in satisfaction of his debts. We reverse the judgment of the district court and remand the case for that court to evaluate the Government's alternative argument that it may garnish WDG's assets by piercing the corporate veil between WDG and Monts.

## I.  Background

In 2001 the district court ruled that Monts and TDC Management Corporation (TDC), of which Monts was president, were jointly and severally liable to the United States for $1,285,198.31 in damages for violations of the False Claims Act. We affirmed this ruling in 2002, *United States v. TDC Mgmt. Corp.*, 288 F.3d 421 [hereinafter, *TDC Mgmt. I*]; in 2003 TDC was dissolved. The Government sought to recover Monts's debt pursuant to the FDCPA, which requires that, upon application by the United States and its satisfaction of certain conditions, 28 U.S.C. § 3205(b), the court

> issue a writ of garnishment against property . . . in which the debtor has a substantial nonexempt interest and which is in the possession, custody, or control of a person other than the debtor, in order to satisfy [a] judgment against the debtor.

*Id.* § 3205(a), (c)(1).

The Government set its sights on a judgment (in an unrelated case) in favor of WDG, a company of which Monts et ux. owned all the shares as tenants by the entireties. In 2004 a jury in D.C. Superior Court had awarded WDG more than $8 million in damages against the District of Columbia in a dispute concerning an air-rights lease. Upon the Government's application in 2008, the district court issued a writ of garnishment to the District against the judgment it owed WDG. Monts died in 2009.

In July 2012 the district court permitted WDG to intervene in the garnishment proceeding in order to defend its interest in the $8 million judgment. *See* FED. R. CIV. P. 24(a)(2). Meanwhile, in the unrelated case regarding a lease of air-rights, WDG and the District reached a settlement while their cross-appeals of the $8 million judgment were pending. Pursuant to that agreement, the District paid WDG the $8 million judgment plus interest, less a sum just over $2 million, which it held in escrow pending resolution of the garnishment proceeding. WDG was dissolved in December 2012, but remained a party to this suit pursuant to D.C. CODE § 29-312.05(a), which provides that "[a] dissolved corporation continues its corporate existence . . . to wind up and liquidate its business and affairs." *See also id.* § 29-312.05(b)(6).

The Government moved for a "disposition order" directing the District to transfer to it the amount of Monts's judgment debt (plus interest) from the funds being held in escrow. *See* 28 U.S.C. § 3205(c)(7). The Government argued the settlement funds owed to WDG could be garnished to satisfy Monts's debt because (1) as a shareholder and director of WDG, Monts had a sufficient property interest in the funds, or alternatively, (2) the company was Monts's alter ego,

wherefore the court should disregard the corporate form and treat WDG's assets as Monts's. The district court refused to strike an expert declaration of Robert Hersh that the Government submitted in support of its theories, and granted the Government's motion for a disposition order. It held Monts had a sufficient interest in the settlement funds owed to WDG to permit their garnishment in satisfaction of Monts's judgment debt, and therefore did not "reach the question of veil piercing." Upon further briefing, the district court ordered the District of Columbia to pay to the Government the $2,100,487.49 then held in escrow in "full satisfaction of the judgment against defendants," including interest.

## II. Analysis

As a preliminary matter, WDG asserts that an issue on appeal is whether "this case should be dismissed due to the death and dissolution" of Monts and TDC, respectively. This argument is forfeit because WDG does not further develop it (or even mention it again) after this "single, conclusory statement." *Bryant v. Gates*, 532 F.3d 888, 898 (D.C. Cir. 2008). We therefore turn to WDG's arguments that the district court erred in concluding Monts had a property interest in the settlement funds for purposes of the FDCPA and abused its discretion by admitting the Hersh Declaration.

### A. Monts Has No Property Interest in the Settlement Funds that Are Owed WDG for Purposes of the FDCPA

As mentioned above, Monts and his wife owned all shares of WDG as tenants by the entireties from 1991 until Monts's death in 2009. WDG was owed first a judgment debt and then settlement funds by the District of Columbia. WDG challenges the district court's ruling that Monts had a

sufficient property interest in the settlement funds due WDG to permit the Government to garnish them in satisfaction of Monts's debt.  Because this challenge presents solely an issue of law, our review is de novo.  *Williams v. First Gov't Mortg. & Inv'rs Corp.*, 225 F.3d 738, 747 (D.C. Cir. 2000).

The FDCPA permits the Government to garnish "property . . . in which the debtor has a substantial nonexempt interest."  28 U.S.C. § 3205(a).  "'Property' includes any present or future interest, whether legal or equitable . . . , vested or contingent, . . . and however held."  § 3002(12).  As the Supreme Court held with respect to the analogous statute governing federal tax liens, 26 U.S.C. § 6321, the FDCPA by its terms "creates no property rights but merely attaches consequences, federally defined, to rights created under state law."  *United States v. Craft*, 535 U.S. 274, 278 (2002); *see also Export-Import Bank v. Asia Pulp & Paper Co.*, 609 F.3d 111, 116-17 (2d Cir. 2010).  We therefore "look initially to state law to determine what rights the [judgment debtor] has in the property."  *Craft*, 535 U.S. at 278.  We then determine whether, under federal law, the judgment debtor's "state-delineated rights," *id.*, qualify as "property," 28 U.S.C. § 3002(12), and if so, whether the judgment debtor has a "substantial . . . interest" in that property, § 3205(a).  *See Export-Import Bank*, 609 F.3d at 117; *cf. Craft*, 535 U.S. at 278.

Applying D.C. law to determine what rights Monts had in the settlement funds, *see Craft*, 535 U.S. at 278, we conclude he had no interest in the funds that amounts to "property" for purposes of § 3002(12).  "[I]t is well established that because of the separate legal existence of a corporation, the corporate property is vested in the corporation itself and not in the stockholders."  *Christacos v. Blackie's House of Beef, Inc.*, 583 A.2d 191, 195 (D.C. 1990) (alteration in original).  D.C.

law is thus in accord with the "fundamental principle of corporate law that '[t]he owner of the shares of stock in a company is not the owner of the corporation's property.'" *Smith v. Wash. Sheraton Corp.*, 135 F.3d 779, 786 (D.C. Cir. 1998) (alteration in original) (quoting *R.I. Hosp. Tr. Co. v. Doughton,* 270 U.S. 69, 81 (1926)).

Therefore, although a shareholder "has essential rights to share in the profits and in the distribution of assets on liquidation," the shareholder has no "specific or aliquot interest in the assets of the corporation." *Office of People's Counsel v. Pub. Serv. Comm'n*, 520 A.2d 677, 682 (D.C. 1987). As a shareholder, Monts has no interest in any specific corporate asset because the corporation may use any asset to satisfy creditors or engage in other business rather than distribute that asset as a dividend or upon liquidation. The Government argues that Monts had a future interest in the settlement funds for purposes of § 3002(12) based upon his right to share in WDG's profits and, upon liquidation, its assets. The writ of garnishment at issue here, however, was issued against the settlement funds themselves, not against Monts's shares.

The Government nonetheless argues that Monts has a present interest in the settlement funds because WDG is "a Sub-Chapter S Corporation," and shareholders of such corporations have "immediate or direct access to corporate assets." Not so. Subchapter S of chapter 1 of the Internal Revenue Code permits "shareholders of qualified corporations to elect a 'pass-through' taxation system under which income is subjected to only one level of taxation." *Gitlitz v. Comm'r of Internal Revenue*, 531 U.S. 206, 209 (2001). To this end, corporate gains and losses may be treated by shareholders as their own for income tax purposes, *id.* (citing 26 U.S.C.

§ 1366(a)(1)(A)), but this tax treatment does not permit a shareholder any "direct access to corporate assets."

The Government also asserts that Monts, as a shareholder, had, in the terms of § 3002(12), an "equitable" interest in the settlement funds owed to WDG. The Government cites *Estate of Raleigh v. Mitchell*, 947 A.2d 464 (D.C. 2008), for the proposition that shareholders of a corporation "are equitable owners of the property and assets of the corporation." *Id.* at 470 n.7. We must attend, however, to "the substance of the rights state law provides, not merely the labels the State gives these rights." *Craft*, 535 U.S. at 279. Although the D.C. Court of Appeals has occasionally "recognized [the] principle" that shareholders "are equitable owners" of corporate assets, *Raleigh*, 947 A.2d at 470 n.7; *see also People's Counsel*, 520 A.2d at 681, it has never accorded a shareholder any actual property interest in or right to a corporate asset based upon the shareholder's "equitable" ownership, *see, e.g.*, *Raleigh*, 947 A.2d at 469-70 & n.7 ("[S]uch equitable interest does not alter the fact that title to corporate property is vested in the corporation"); *People's Counsel*, 520 A.2d at 681-83. D.C. law therefore does not grant shareholders a property right in corporate assets that qualifies as an "equitable" interest for purposes of § 3002(12) of the FDCPA. Accordingly, we reverse the district court's holding that Monts had a property interest in the settlement funds.

## B.  Piercing the Corporate Veil

Having rejected the Government's primary argument, we must remand the case to the district court to consider whether to pierce the corporate veil and allow the Government to garnish WDG's assets in satisfaction of Monts's debts. *See Lawlor v. District of Columbia*, 758 A.2d 964, 975 (D.C.

2000) (A court may "disregard the corporate entity" where "the corporation is . . . an *alter ego* . . . of the person in control" (quotation marks omitted)). Whether the corporate form may be disregarded is ultimately "a question of law," *Jackson v. Loews Wash. Cinemas, Inc.*, 944 A.2d 1088, 1095 (D.C. 2008), but it requires an inevitably fact-bound multi-factor analysis, *see id.* at 1095-96; *see also Lawlor*, 758 A.2d at 975, that the district court did not conduct. *See Pollack v. Hogan*, 703 F.3d 117, 121 (D.C. Cir. 2012) (per curiam) (remanding per "our usual (although hardly universal) practice of declining to address arguments unaddressed by the district court"); *Janini v. Kuwait Univ.*, 43 F.3d 1534, 1537 (D.C. Cir. 1995) (remanding because the "district court did not address . . . primarily factual issues").

WDG, citing *TDC Management I*, 288 F.3d at 426-27, nonetheless claims it is "patently unfair for [it] to have to litigate this issue following a remand." In the cited case, however, we declined to exercise our discretion to entertain an argument TDC had failed to raise in district court, in part because doing so would have required us to remand the case to the district court for trial, and the delay would have caused "obvious prejudice to the government." *Id.* at 425-27. No comparable consideration obtains in this case, where the issue being remanded was properly raised in the district court and hence preserved.

WDG asserted at oral argument that, regardless whether the district court pierces the corporate veil, Monts's interest in the settlement funds is not a "nonexempt interest" subject to garnishment under § 3205(a). This argument is doubly forfeit. As the district court pointed out, "[a] judgment debtor can elect to have certain property exempted" under § 3014(a), but "[n]o election has been made in this case." Mem. Op., Doc. No. 289, at 6 n.5 in *United States v. TDC Mgmt. Corp.*,

1:89-cv-01533 (Jan. 5, 2015). Furthermore, WDG did not raise the issue in its appellate briefs. *See United States ex rel. Davis v. District of Columbia*, 793 F.3d 120, 127 (D.C. Cir. 2015).

WDG and the Government dispute the effect that D.C. law governing tenancy by the entireties has upon the garnishment in this case. *See Morrison v. Potter*, 764 A.2d 234, 236-37 (D.C. 2000) (holding that "property subject to a tenancy by the entireties is liable for the spouses' joint debts" and, upon the death of one spouse, "for the individual debts of the surviving co-tenant," but "is unreachable by creditors of one but not of both of the tenants"). Inexplicably, neither party at any point in this litigation cited the proviso in the FDCPA that "[c]o-owned property shall be subject to garnishment to the same extent as co-owned property is subject to garnishment under the law of the State in which such property is located." § 3205(a); *see also* § 3010(a) ("The remedies available to the United States under this chapter may be enforced against property which is co-owned by a debtor and any other person only to the extent allowed by the law of the State where the property is located"). On remand, the parties and the district court should consider the implications of these provisions.

Although WDG asserts that TDC, Monts, and WDG "appear[] before this Court," the fact is that no party appealed the district court's holding that Monts and TDC had forfeited any objection to the writ of garnishment. Because that ruling stands, neither Monts nor TDC is a proper party to this appeal. It follows, the Government argues, that we must "disregard any arguments made" by them or on their behalf. The Government thereby, albeit implicitly, raises "the doctrine of prudential standing," which prohibits a litigant from "enforc[ing] the rights of third parties." *Deutsche Bank*

*Nat'l Tr. Co. v. FDIC*, 717 F.3d 189, 194 (D.C. Cir. 2013); *cf. Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1387 n.3 (2014) (raising doubt as to whether the "[t]he limitations on third-party standing" are prudential). WDG's claim that a shareholder's creditors may not garnish corporate assets in satisfaction of the shareholder's debts because D.C. law vests ownership of corporate assets in the corporation (which we addressed above) and its argument that the corporate entity should not be set aside on equitable grounds (which we remand to the district court) both assert the company's own rights. We need not now decide whether, if the district court pierces the corporate veil and treats WDG's assets as Monts's, then WDG may resist garnishment because the Montses co-owned WDG. We leave this issue, should it arise, to the district court in the first instance.

## C. The District Court's Evidentiary Rulings and Factual Findings

WDG challenges the district court's denial of its motion to strike the Hersh Declaration. We review the district court's evidentiary rulings on expert testimony for abuse of discretion. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 141-43 (1997).

WDG argues the Declaration is not admissible as expert testimony under Federal Rules of Evidence 702 and 704 because it contains legal conclusions, and it fails to cite facts or a methodology that would permit us to "assess the reliability of Hersh's conclusions." We see no abuse of discretion in the district court's refusal to exclude the Hersh Declaration in its entirety. The Declaration includes admissible analyses of relevant facts, which analyses Hersh conducted by applying his knowledge of "income tax[] and accounting matters" to the corporate records of WDG and

TDC and the tax records of the two corporations and of the Montses.

Furthermore, the district court said it would disregard "legal conclusions and other deficiencies," Mem. Op., Doc. No. 289, at 3 n.2, and, just so, the court, while relying upon the Hersh Declaration for some factual analyses, analyzed the law by reference solely to cases and statutes and not to the Hersh Declaration, *see id.* at 6-14. Nor did the district court rely upon any of the three conclusions[1] that, according to WDG, do not cite facts or methodology. We leave it to the district court in the first instance to evaluate the admissibility of these and other portions of the Hersh Declaration insofar as the court may rely upon them.

WDG also challenges two of the district court's factual findings, which we review only for clear error. *Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*, 134 S. Ct. 1744, 1748 (2014). First, WDG complains the district court "erroneously concluded that Mr. Monts was 'able to compel WDG to distribute corporate assets to himself and other corporations that he owned.'" The record, however, supports the court's finding: Hersh averred, among other things, that "Monts' signature on numerous corporate documents, his presiding over corporate affairs, and his actions on behalf of WDG is pervasive in the corporate documents"; that WDG's board met only seven times in the 24 years of its existence; and that WDG classified loans from affiliated companies owned by Monts as "Loans from Shareholder."

---

[1] They are that (1) "funds of Monts' other affiliated entities were mingled with WDG's funds," (2) TDC dissipated assets after the judgment against it and Monts, and (3) WDG "did not display the characteristics of a viable corporation."

Second, WDG argues the district court erred in saying WDG did not dispute that Monts "controlled the reins of the corporation and its assets." In context, we read the court to mean WDG and its expert failed meaningfully to rebut Hersh's conclusion that Monts effectively controlled WDG even though WDG's board met occasionally, and we see no clear error in that finding.

### III. Conclusion

In sum, because the district court erred in concluding Monts had a substantial property interest in the settlement funds for purposes of the FDCPA, we remand this case for further proceedings consistent with this opinion. With regard to the Government's argument for piercing the corporate veil, we commend to the district court's consideration, if necessary, the doctrine of third-party standing and 28 U.S.C. §§ 3205(a) and 3010(a), which refer to state law on co-owned property.

*So ordered.*