156 T.C. No. 8

UNITED STATES TAX COURT

ROBERT ROWEN, Petitioner <u>v.</u>
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 18083-18P.                          Filed March 30, 2021.

P failed to pay assessed tax liabilities totaling at least $474,846 relating to tax years 1994, 1996, 1997, and 2003 through 2007. R certified that P has a "seriously delinquent tax debt" within the meaning of I.R.C. sec. 7345(b). P petitioned this Court to determine that R's certification was erroneous pursuant to I.R.C. sec. 7345(e)(1).

P moved for summary judgment on the basis that I.R.C. sec. 7345 violates the Due Process Clause of the Fifth Amendment to the Constitution because it infringes the right to international travel. P also alleged that I.R.C. sec. 7345 violates his human rights as expressed in the Universal Declaration of Human Rights (UDHR).

R filed a cross-motion for summary judgment alleging that (1) I.R.C. sec. 7345 is constitutional; (2) the UDHR does not create actionable claims in Federal courts; (3) P's debt remains enforceable; and (4) R did not err in certifying P's tax liabilities as a seriously delinquent tax debt.

**Served 03/30/21**

Held:  Because I.R.C. sec. 7345 merely provides for the certification of certain tax-related facts and does not restrict in any manner the right to international travel, it cannot run afoul of the Due Process Clause of the Fifth Amendment.

Held, further, for the same reason, I.R.C. sec. 7345 cannot violate the UDHR.

Held, further, P has abandoned his claim that I.R.C. sec. 7345 deprives him of an opportunity for a meaningful hearing within the meaning of the Due Process Clause of the Fifth Amendment.

Held, further, R has established that he is entitled to judgment as a matter of law that no portion of P's seriously delinquent tax debt is unenforceable by operation of the period of limitations on collection.

Held, further, R did not err in certifying that P has a seriously delinquent tax debt within the meaning of I.R.C. sec. 7345(b).

Sandeep Singh, for petitioner.

Lisa P. Lafferty, John S. Hitt, and Douglas S. Polsky, for respondent.

OPINION

TORO, Judge:  For more than two decades, petitioner, Robert Rowen, failed to pay his Federal tax as required by law.  The Internal Revenue Service ("IRS") attempted to collect the outstanding amounts through its usual means--sending demands, filing liens, attempting to levy on assets--all without much success.  In

2018, when Dr. Rowen's outstanding tax balance was close to $500,000, the Commissioner of Internal Revenue turned to a new tool in his collection toolbox-- section 7345.[1]

Enacted in 2015, section 7345 authorizes the Commissioner to send to the Secretary of the Treasury a certification that an individual has a "seriously delinquent tax debt." The Secretary of the Treasury in turn must transmit that certification to the Secretary of State "for action with respect to denial, revocation, or limitation of a passport pursuant to section 32101 of the * * * [Fixing America's Surface Transportation Act ('FAST Act'), Pub. L. No. 114-94, 129 Stat. at 1729 (2015)]." Sec. 7345(a).

Applying his authority under section 7345, the Commissioner certified that Dr. Rowen has a seriously delinquent tax debt. That certification was sent to the Secretary of State. According to the record before us, the Secretary of State has not undertaken any action to revoke Dr. Rowen's passport.

After receiving notification of the Commissioner's certification, Dr. Rowen filed a petition in our Court under section 7345(e). His motion for summary judgment followed. In it, Dr. Rowen asks us to determine that the Commissioner's

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code (the "Code") in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure. We round all monetary amounts to the nearest dollar.

certification was erroneous. Dr. Rowen offers two principal arguments in support of his request. First, he maintains that section 7345 is unconstitutional because it prohibits international travel in violation of the Due Process Clause of the Fifth Amendment to the Constitution. Second, he argues that section 7345 violates his human rights under the Universal Declaration of Human Rights ("UDHR"), G.A. Res. 217A (III), U.N. Doc. A/810 (Dec. 10, 1948). The Commissioner has filed a cross-motion for summary judgment, defending the statute and maintaining that the certification was proper. Finding no merit in Dr. Rowen's arguments and otherwise perceiving no error in the Commissioner's certification, we will sustain the certification.

## Background

The following background statement is drawn from the parties' pleadings and motion papers, including the administrative record, as supplemented by the parties, which was attached to the Commissioner's motion for summary judgment. The relevant facts in the background statement are summarized solely for the purpose of resolving the pending motions and are not in dispute. Dr. Rowen resided in California when he petitioned this Court.

A.      Dr. Rowen's Professional Background and International Travel

Dr. Rowen, a U.S. citizen, is a medical doctor licensed to practice in California.  He frequently travels to developing countries to offer medical services free of charge to populations that would not otherwise have access to adequate medical care.  He also has family members in Singapore and mainland China, where he travels for personal reasons.

B.      Dr. Rowen's Failure To Comply With His Federal Tax Obligations

For more than two decades, Dr. Rowen has repeatedly failed to file Federal income tax returns.  As relevant to this case, Dr. Rowen first failed to file a timely income tax return for tax year 1994.  In April 1997, Dr. Rowen was indicted on, and pleaded guilty to, one count of corruptly endeavoring to impede an IRS investigation of his activities.  As required by his plea agreement, Dr. Rowen filed delinquent income tax returns for 1994 and 1996 on March 15, 1998, and timely filed his 1997 income tax return on April 15, 1998.  The IRS issued to Dr. Rowen a notice of deficiency for tax year 1994.  Dr. Rowen did not petition this Court for redetermination, and the 1994 deficiency was assessed on May 22, 2000.  On April 23, 2000, Dr. Rowen submitted amended returns for tax years 1996 and 1997.  The IRS processed Dr. Rowen's amended returns and assessed the amounts reported on those returns on June 19 and July 31, 2000, respectively.

In an effort to collect the assessed amounts, on June 18, 2001, the IRS issued to Dr. Rowen a notice of intent to levy relating to tax years 1994, 1996, and 1997. The notice explained Dr. Rowen's right to seek a hearing before the IRS Office of Appeals ("IRS Appeals") (whose determination would have been reviewable by this Court pursuant to section 6330), but Dr. Rowen did not avail himself of that opportunity. Instead, on June 21, 2001, Dr. Rowen filed for bankruptcy, seeking discharge of his Federal income tax liabilities for tax years 1992 through 1997. On March 5, 2003, the bankruptcy court held that Dr. Rowen willfully failed to file his tax returns and failed to pay his income tax liabilities for tax years 1992 through 1997. The bankruptcy court refused to discharge the liabilities.

Despite his prior plea agreement, Dr. Rowen again stopped filing income tax returns starting with 2003. It was only after the IRS generated a substitute for return for tax year 2007 in July 2009 that Dr. Rowen submitted returns for tax years 2003 through 2007. But Dr. Rowen failed to pay the amounts due reflected in those returns, so the IRS filed notices of Federal tax lien ("NFTLs") and mailed notices of filing the NFTLs to Dr. Rowen. The IRS also issued notices of intent to levy against Dr. Rowen relating to his unpaid liabilities for tax years 2003 through 2007.[2] In response, Dr. Rowen timely filed a request for a hearing with IRS

---

[2]The first NFTL was filed on October 29, 2010, and related to Dr. Rowen's
(continued...)

Appeals pursuant to sections 6320 and 6330 relating to the collection of his income tax liabilities for 2003 through 2007. On November 30, 2012, IRS Appeals issued to Dr. Rowen a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330, sustaining the NFTL filings and the proposed levies relating to tax years 2003 through 2007.

On December 27, 2012, Dr. Rowen timely petitioned this Court at docket No. 31141-12L for review of the notice of determination. On October 28, 2014, we entered a stipulated decision sustaining IRS Appeals' determination in full.

C.     Certification Under Section 7345

Dr. Rowen has not fully paid the assessed income tax liabilities for tax years 1994, 1996, 1997, and 2003 through 2007. To facilitate collection of the tax owed and acting under the newly granted authority of section 7345, on or about July 16, 2018, the Commissioner certified Dr. Rowen as an individual owing a seriously delinquent tax debt. The certification was sent to the State Department

---

[2](...continued)
2003 through 2006 income tax liabilities. Notice of the filing of the first NFTL was provided to Dr. Rowen on November 2, 2010. The second NFTL was filed on December 31, 2010, and related to his 2007 income tax liability. Notice of the filing of the second NFTL was provided to Dr. Rowen on January 6, 2011. The first notice of intent to levy was issued on November 19, 2010, and related to Dr. Rowen's 2003 through 2006 income tax liabilities. The second notice of intent to levy was issued on February 2, 2011, and related to Dr. Rowen's 2007 income tax liability.

for action with respect to denial, revocation, or limitation of Dr. Rowen's passport, as provided in section 7345(a), and the Commissioner sent Dr. Rowen a notice CP508C, Notice of Certification of Your Seriously Delinquent Federal Tax Debt to the State Department, as required by section 7345(d). In that notice, the Commissioner stated that Dr. Rowen owed $474,847 in Federal income tax for tax years 1994, 1996, 1997, and 2003 through 2007.

D.    Dr. Rowen's Passport

Dr. Rowen held a valid passport when the certification was made. That passport expires in November 2024. Although the State Department was empowered to revoke Dr. Rowen's passport after receiving the certification, the State Department, as of August 20, 2020, had not informed Dr. Rowen of any adverse action with respect to his existing passport.[3]

E.    Proceedings in This Court

On September 12, 2018, Dr. Rowen filed a petition in our Court under section 7345(e)(1). The cross-motions for summary judgment now before us followed in due course.

---

[3]By order dated August 5, 2020, the Court ordered the parties to supplement the administrative record with respect to petitioner's passport. On August 21, 2020, the parties filed a stipulation of facts that updated and supplemented the administrative record in accordance with the Court's order.

## Discussion

I.    Scope and Standard of Review Under Section 7345

Summary judgment expedites litigation and avoids costly, time-consuming, and unnecessary trials. Fla. Peach Corp. v. Commissioner, 90 T.C. 678, 681 (1988). In cases that are subject to a de novo scope of review, this Court may grant summary judgment when there is no genuine dispute as to any material fact and a decision may be rendered as a matter of law. Rule 121(b); Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), aff'd, 17 F.3d 965 (7th Cir. 1994). In cases that are decided on the administrative record (record rule cases), this Court ordinarily decides the issues raised by the parties by reviewing the administrative record using a summary adjudication procedure. See Van Bemmelen v. Commissioner, 155 T.C. ___, ___ (slip op. at 24-26) (Aug. 27, 2020) (summarizing the relationship between scope and standard of review and the standard of summary adjudication).

This is the first occasion on which this Court has considered the merits of a certification pursuant to section 7345. See Ruesch v. Commissioner, 154 T.C. 289 (2020) (considering section 7345 but concluding that the taxpayer's challenges to the merits of the certification were moot). Although a court reaching a decision on the merits ordinarily must consider both the scope of review (that is, what evidence

the court will consider) and the standard of review (that is, how the court will evaluate the evidence it considers), see Kasper v. Commissioner, 150 T.C. 8, 14 (2018), we need not do so here. As to the scope of review, there is no dispute between the parties with respect to the evidence we should consider. As to the standard of review, as we explain below, our decision would be the same whether we reviewed the Commissioner's certification de novo or for abuse of discretion. Accordingly, we leave for another day a decision on the scope and standard of review under section 7345(e)(1).

## II. FAST Act Section 32101

We turn now to FAST Act section 32101 in general and section 7345 in particular.

### A. Structure of FAST Act Section 32101

Congress enacted section 7345 as part of FAST Act section 32101. FAST Act section 32101 included nine subsections, seven addressing operative rules and two addressing housekeeping matters.[4]

---

[4]On the housekeeping front, section 32101(h) of the Fixing America's Surface Transportation Act ("FAST Act"), Pub. L. No. 114-94, 129 Stat. at 1733 (2015), amended the table of sections for subchapter D of chapter 75 of the Code to reflect the addition of section 7345, and FAST Act section 32101(i), 129 Stat. at 1733, set out the effective date of the other provisions of that section.

Of the seven operative subsections, four--subsections (a), (b), (c), and (d)--amended the Code and provided rules governing the conduct of the Commissioner and the Secretary of the Treasury. Of primary relevance here, FAST Act section 32101(a) added section 7345 as a new section of the Code.[5]

The remaining three operative subsections--subsections (e), (f), and (g)--provided rules applicable to the Secretary of State and were subsequently codified in title 22 of the United States Code.

We consider some of these provisions in greater detail below.

B. Section 7345

Section 7345(a) provides:

If the Secretary [of the Treasury] receives certification by the Commissioner of Internal Revenue that an individual has a seriously delinquent tax debt, the Secretary [of the Treasury] shall transmit such certification to the Secretary of State for action with respect to denial, revocation, or limitation of a passport pursuant to section 32101 of the FAST Act.

Section 7345(b)(1) generally defines a "seriously delinquent tax debt" as an "unpaid, legally enforceable Federal tax liability" that "has been assessed," "is

---

[5]FAST Act section 32101(b), 129 Stat. at 1731, amended the notice requirements under sections 6320(a)(3) and 6331(d)(4). FAST Act section 32101(c), 129 Stat. at 1731, amended section 6103(k) to permit the Secretary of the Treasury to disclose to the Secretary of State certain return information. FAST Act section 32101(d), 129 Stat. at 1732, amended section 7508(a) to make the rule of that section applicable to the certification of a seriously delinquent tax debt.

greater than" $51,000,[6] for which "a notice of lien has been filed pursuant to section 6323 and the administrative rights under section 6320 * * * have been exhausted or have lapsed, or * * * levy is made pursuant to section 6331." Section 7345(b)(2) excludes from the definition of "seriously delinquent tax debt" any debt that is "being paid in a timely manner pursuant to an agreement * * * under section 6159 or 7122" and any debt for which "collection is suspended * * * because a due process hearing under section 6330 is requested or pending, or * * * because" relief under section 6015 is requested.[7] Section 7345(d) requires the Commissioner to contemporaneously notify a taxpayer of any certification under subsection (a).

Section 7345(c) provides rules for reversing a certification. It requires the Commissioner to "notify the Secretary (and the Secretary shall subsequently notify the Secretary of State) if such certification is found to be erroneous [by a court under section 7345(e) as described below] or if the debt with respect to such

---

[6]Section 7345(b)(1)(B) requires that the liability be greater than $50,000. This amount is adjusted for inflation beginning in tax years after 2016. Sec. 7345(f). The adjusted amount for tax year 2018 was $51,000.

[7]In implementing section 7345, the Commissioner has established certain discretionary exclusions from certification for debts that would otherwise qualify under the section 7345 definition. See Internal Revenue Manual pt. 5.1.12.27.4 (Dec. 20, 2017). Neither the exclusions in section 7345(b)(2) nor the discretionary exclusions are at issue, so we need not discuss them here.

certification is fully satisfied or ceases to be a seriously delinquent tax debt by reason of subsection (b)(2)." As with a certification, the Commissioner must notify the taxpayer of a reversal of a certification. Sec. 7345(d).

The Court's jurisdiction to consider this case is found in section 7345(e), which provides as follows:

> SEC. 7345(e). Judicial Review of Certification.--
>
> (1) In general.--After the Commissioner notifies an individual under subsection (d), the taxpayer may bring a civil action against the United States in a district court of the United States, or against the Commissioner in the Tax Court, to determine whether the certification was erroneous or whether the Commissioner has failed to reverse the certification. For purposes of the preceding sentence, the court first acquiring jurisdiction over such an action shall have sole jurisdiction.
>
> (2) Determination.--If the court determines that such certification was erroneous, then the court may order the Secretary to notify the Secretary of State that such certification was erroneous.

Section 7345(e) does not set any deadline for filing the civil action it authorizes. Once the Commissioner notifies a taxpayer that a certification under section 7345(a) has been made, the taxpayer may challenge that certification in a civil action filed either in this Court or in a Federal District Court. The court first acquiring jurisdiction over a certification challenge has sole jurisdiction over that action. Sec. 7345(e)(1).

C.    FAST Act Section 32101(e)

As just described, under section 7345(a), a certification that an individual has a seriously delinquent tax debt must be transmitted to the Secretary of State "for action with respect to denial, revocation, or limitation of a passport pursuant to section 32101 of the FAST Act."

The relevant action by the Secretary of State is authorized by FAST Act section 32101(e), codified as subsection (e) of 22 U.S.C. section 2714a (2018), which provides:

(e) Authority To Deny or Revoke Passport.--

(1) Denial.--

(A) In general.--Except as provided under subparagraph (B), upon receiving a certification described in section 7345 of title 26 from the Secretary of the Treasury, the Secretary of State shall not issue a passport to any individual who has a seriously delinquent tax debt described in such section.

(B) Emergency and humanitarian situations.-- Notwithstanding subparagraph (A), the Secretary of State may issue a passport, in emergency circumstances or for humanitarian reasons, to an individual described in such subparagraph.

(2) Revocation.--

(A) In general.--The Secretary of State may revoke a passport previously issued to any individual described in paragraph (1)(A).

(B) Limitation for return to United States.--If the Secretary of State decides to revoke a passport under subparagraph (A), the Secretary of State, before revocation, may--

(i) limit a previously issued passport only for return travel to the United States; or

(ii) issue a limited passport that only permits return travel to the United States.

(3) Hold harmless.--The Secretary of the Treasury, the Secretary of State, and any of their designees shall not be liable to an individual for any action with respect to a certification by the Commissioner of Internal Revenue under section 7345 of title 26.

In accordance with that statute, once the Secretary of State receives notice of the certification, the Secretary of State is required (absent emergency or humanitarian considerations) to deny a passport (or renewal of a passport) to a seriously delinquent taxpayer and is permitted to revoke any passport previously issued to such person. See 84 Fed. Reg. 67184, 67184-67186 (Dec. 9, 2019) (to be codified at 22 C.F.R. pt. 51).

Under FAST Act section 32101(g), if the Secretary of State receives notice from the Secretary of the Treasury that an individual no longer has a seriously delinquent tax debt, the Secretary of State must remove the certification from the individual's record.[8]

---

[8]The other operative subsection that applies to the Secretary of State, FAST

(continued...)

D.    <u>Summary of Relevant FAST Act Provisions</u>

To summarize the foregoing, the FAST Act authorizes different Government actors to make different decisions and carry out different actions. Pursuant to section 7345, the Commissioner is charged with determining whether a seriously delinquent tax debt exists, making a certification of that fact, and notifying the taxpayer of that certification. Also pursuant to section 7345, the Secretary of the Treasury is charged with transmitting the certification made by the Commissioner to the Secretary of State. By contrast, pursuant to FAST Act section 32101(e), the Secretary of State acts with respect to the passport of an individual who has been certified to have a seriously delinquent tax debt. The Secretary of State is permitted, in his discretion, to revoke a passport that has already been issued. And he is prohibited from issuing a new passport or renewing an expiring one, although the prohibition is not absolute. He retains discretion to issue a new passport or renew an expiring one "in emergency circumstances or for humanitarian reasons." FAST Act sec. 32101(e)(1)(B).

In short, the actions of the Commissioner, the Secretary of the Treasury, and the Secretary of State are governed by separate and distinct rules, which impose

---

[8](...continued) Act section 32101(f), 129 Stat. at 1732, authorizes the Secretary of State to revoke or deny a passport to an individual without a valid Social Security number.

different responsibilities on each and grant them varying degrees of discretion in carrying out those responsibilities.

III.     Dr. Rowen's Motion for Summary Judgment

Dr. Rowen claims he is entitled to judgment as a matter of law.  He argues that section 7345 is unconstitutional because it violates the Fifth Amendment's Due Process Clause.  In addition, he advances a theory (not set out in the petition) that section 7345 violates his right to travel under the UDHR.  We address each of Dr. Rowen's arguments below.

We note as an initial matter that section 7345(e)(1) authorizes us to "determine whether the certification was erroneous."  In general, an action is "erroneous" if it is "[i]ncorrect" or "inconsistent with the law or the facts." Black's Law Dictionary 659 (10th ed. 2014); see also Merriam-Webster's Collegiate Dictionary 425 (11th ed. 2014) (defining "erroneous" as "containing or characterized by error:  MISTAKEN"); cf. Kasper v. Commissioner, 150 T.C. at 23 (examining whether an agency's decision was "based on an erroneous view of the law or a clearly erroneous assessment of the facts" (quoting Fargo v. Commissioner, 447 F.3d 706, 709 (9th Cir. 2006), aff'g T.C. Memo. 2004-13)).  Of course, if section 7345 were unconstitutional, any certification made under that section would be inconsistent with law and therefore erroneous.  See, e.g., Norton

v. Shelby Cty., 118 U.S. 425, 442 (1886) ("An unconstitutional act is not a law; it confers no rights; it imposes no duties; it affords no protection; it creates no office; it is, in legal contemplation, as inoperative as though it had never been passed."). We therefore have authority under section 7345(e) to review Dr. Rowen's arguments. See, e.g., Battat v. Commissioner, 148 T.C. 32, 46 (2017) (noting that this Court, like all Federal courts, may adjudicate constitutional questions that arise within its jurisdiction and collecting authorities); see also, e.g., Conard v. Commissioner, 154 T.C. 96, 97 (2020) (reviewing and upholding the constitutionality of section 72(t) in a deficiency case).

A.    Dr. Rowen's Fifth Amendment Argument

Dr. Rowen claims that "I.R.C. § 7345 is unconstitutional on its face because it prohibits international travel--which is a fundamental right enshrined in the Fifth Amendment of the United States Constitution." Petitioner's Motion for Summary Judgment, para. 18. The claim has no merit.

The plain text of section 7345 imposes no prohibition on international travel.[9] Section 7345 merely provides a process by which the Commissioner may

---

[9]Although the caption of section 7345 reads "Revocation or Denial of Passport in Case of Certain Tax Delinquencies," the caption does not have the force of law, see sec. 7806(b) (providing that no "descriptive matter relating to the content of this title [shall] be given any legal effect"), and cannot cloud the plain words of the statute, see, e.g., United States v. Reorganized CF & I Fabricators of

(continued...)

certify to the Secretary of the Treasury the existence of a seriously delinquent tax debt and the Secretary of the Treasury in turn transmits that certification to the Secretary of State.[10]  Section 7345 expressly leaves all passport-related decisions for "action" by the Secretary of State.  See sec. 7345(a).  Any such action is based on the authority granted to the Secretary of State pursuant to FAST Act section 32101(e), which must be exercised in the judgment and discretion of the Secretary of State.  Section 7345 (which, as already discussed, was enacted by FAST Act section 32101(a)) simply does not authorize any passport-related decision and therefore does not prohibit international travel.  Indeed, the Commissioner may well not know whether a particular taxpayer has a valid passport or intends to seek one when the Commissioner makes his certification.

---

[9](...continued)
Utah, Inc., 518 U.S. 213, 222-223 (1996) (applying section 7806(b) in interpreting section 4971 and accepting the Government's disavowal of reliance on a title heading); N.Y. & Presbyterian Hosp. v. United States, 881 F.3d 877, 886 n.13 (Fed. Cir. 2018) (concluding that the Court of Federal Claims erred by relying on the title of section 3202(b) rather than the text of the statute because the Code "explicitly provides that its titles have no legal effect"); see also Antonin Scalia & Bryan A. Garner, Reading Law:  The Interpretation of Legal Texts 222 (2012) (observing that "a title or heading should never be allowed to override the plain words of a text").

[10]Although the statute establishes the process of certification as described above, we have recognized that, in practice, the Secretary of the Treasury and the Commissioner have condensed the two steps into one.  See Ruesch v. Commissioner, 154 T.C. 289, 292 n.3 (2020).

Dr. Rowen also claims that section 7345 "giv[es] the Commissioner the power to order the revocation or denial of the passport of a U.S. citizen * * * [and] to prohibit U.S. nationals from leaving the country," see Petitioner's Motion for Summary Judgment, at para. 17, and that "the Commissioner has exercised his power to revoke Dr. Rowen's passport, prohibiting him from leaving the country-- regardless of the reason for his travels," id. at para. 36. Neither contention is correct.

First, section 7345 gives the Commissioner no power to order the revocation or denial of a passport of a U.S. citizen. As we just discussed, section 7345 simply authorizes the Commissioner to certify the existence of a seriously delinquent tax debt based on the presence of certain tax-related facts (for example, an outstanding liability for an assessed tax in excess of a specified amount, the existence of a lien or levy, and the absence of proceedings before IRS Appeals). A provision other than section 7345 (FAST Act section 32101(e)) gives a different government actor (the Secretary of State) power to act with respect to a passport after receiving a certification made by the Commissioner. FAST Act section 32101(e) requires the Secretary of State to exercise his own judgment in determining whether to revoke a passport and whether to issue a new passport (or renew an existing one) for emergency or humanitarian reasons. In short, only the Secretary of State, not the

Commissioner, may revoke or deny a passport, and the Secretary of State's authority does not derive from section 7345.

Second, as far as the record shows, Dr. Rowen's passport remains in effect. Not only has the Commissioner (who has no such power) not revoked it, but even the Secretary of State (the relevant Government actor with authority to act with respect to Dr. Rowen's passport) has not taken any adverse action against Dr. Rowen.

Dr. Rowen spends considerable effort in his motion attempting to show that the right to international travel is a fundamental right and that its infringement is subject to review under strict scrutiny. But, as the foregoing discussion makes clear, we need not decide these issues here. Regardless of the nature of the right to travel internationally (fundamental or not) and regardless of the standard of review under the Constitution (strict scrutiny, intermediate scrutiny, or rational basis), see, e.g., Eunique v. Powell, 302 F.3d 971 (9th Cir. 2002) (reflecting differing opinions on this issue), a statutory provision (section 7345) that merely provides for the certification of certain tax-related facts and does not restrict in any manner the right to international travel cannot run afoul of the Due Process Clause of the Fifth Amendment.

The constitutionality of the authority granted to the Secretary of State by FAST Act section 32101(e) is not before us, and we express no view on that issue. See Wash. State Grange v. Wash. State Republican Party, 552 U.S. 442, 450 (2008) ("[It is a] fundamental principle of judicial restraint that courts should neither 'anticipate a question of constitutional law['] * * * nor 'formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied.'" (quoting Ashwander v. Tenn. Valley Auth., 297 U.S. 288, 346-347 (1936) (Brandeis, J., concurring))).

B.    Dr. Rowen's UDHR Argument

Dr. Rowen also maintains that section 7345 violates his right to travel under the UDHR.  Dr. Rowen observes that, under Article 13 of the UDHR, "(1) [e]veryone has the right to freedom of movement and residence within the borders of each state" and "(2) [e]veryone has the right to leave any country, including his own, and to return to his country."  Petitioner's Motion for Summary Judgment, at para. 52.  Dr. Rowen further observes that the Supreme Court "has reasoned that * * * [the UDHR] does not 'of its own force impose obligations as a matter of international law' nor does it 'create obligations enforceable in the federal courts.'"  Id. at para. 53 (quoting Sosa v. Alvarez-Machain, 542 U.S. 692, 734-735 (2004)).  Yet, Dr. Rowen argues that "the Supreme Court [has] stated the

UDHR does 'bind the United States as a matter of international law.'" <u>Id.</u> (quoting <u>Sosa</u>, 542 U.S. at 735). This latter statement is simply wrong. The Supreme Court used the language Dr. Rowen quotes <u>not</u> with respect to the UDHR but with respect to the International Covenant on Civil and Political Rights (the "Covenant"). <u>Sosa</u>, 542 U.S. at 735 ("[A]lthough <u>the Covenant</u> does bind the United States as a matter of international law, the United States ratified the Covenant on the express understanding that it was not self-executing and so did not itself create obligations enforceable in the federal courts." (Emphasis added.))

Regardless of Dr. Rowen's misreading of <u>Sosa</u>, however, as with his constitutional argument concerning section 7345, we need not decide here the scope of the UDHR or its applicability in the United States. Whatever that scope and whatever the UDHR's applicability in the United States, section 7345 imposes no limit on the right to travel. Thus, the UDHR cannot provide any grounds for invalidating the Commissioner's certification under section 7345.

IV.    The Commissioner's Cross-Motion for Summary Judgment

In his cross-motion for summary judgment, the Commissioner maintains that his certification was proper and that he is entitled to judgment as a matter of law. As we explain below, we agree.

A.  Dr. Rowen's Procedural Due Process Challenge and Statute of Limitations Claim

We begin by considering two arguments that Dr. Rowen raised in his petition but chose not to advance in his motion for summary judgment. Specifically, Dr. Rowen alleged in his petition that section 7345 deprives him of procedural due process by "certifying his debt for passport revocation" without certain specified procedural safeguards. Dr. Rowen also asserted in his petition that the period of limitations may have run as to certain unidentified portions of his underlying tax debt. The Commissioner must defeat these claims in order to prevail on his motion for summary judgment, and we now analyze them in turn.

1.  Dr. Rowen's Procedural Due Process Claim

Dr. Rowen's petition alleged that the Commissioner failed to provide adequate notice and opportunity for a hearing before he certified Dr. Rowen's debt. But Dr. Rowen did not include that argument in his motion for summary judgment. And although the Commissioner affirmatively alleged in his motion for summary judgment that Dr. Rowen was not deprived of procedural due process, Dr. Rowen did not respond to that argument. We conclude, therefore, that Dr. Rowen has abandoned any procedural due process claim and that the Commissioner is entitled to judgment as a matter of law on this issue. E.g., United States v. TDC Mgmt. Corp., 827 F.3d 1127, 1130 (D.C. Cir. 2016) (concluding an argument was

"forfeit" because the party that had advanced it did "not further develop it (or even mention it again) after * * * [a] 'single, conclusory statement'" (quoting Bryant v. Gates, 532 F.3d 888, 898 (D.C. Cir. 2008))); Schneider v. Kissinger, 412 F.3d 190, 200 n.1 (D.C. Cir. 2005) ("It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work[.] * * * [A] litigant has an obligation to spell out its arguments squarely and distinctly, or else forever hold its peace." (quoting United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990))); accord Masias v. EPA, 906 F.3d 1069, 1077 (D.C. Cir. 2018) (same); United States v. Alonso, 48 F.3d 1536, 1544 (9th Cir. 1995) (same).

### 2. Dr. Rowen's Statute of Limitations Claim

Dr. Rowen also alleged in his petition that some portion of his liabilities may be unenforceable, but again he did not raise this argument in his motion for summary judgment. The Commissioner's cross-motion for summary judgment argues that, while Dr. Rowen has made a vague allegation that the period of limitations may apply, he has not identified any "specific component of his seriously delinquent tax debt" for which collection may be barred by the period of limitations. Dr. Rowen offered no response to this argument. As with respect to Dr. Rowen's procedural due process claim, we could rely on Dr. Rowen's

abandonment of the argument and decide the issue in favor of the Commissioner on that basis alone.

But there is more. The expiration of a period of limitations is an affirmative defense, and "the party raising it must specifically plead it and carry the burden of proving its applicability." Amesbury Apartments, Ltd. v. Commissioner, 95 T.C. 227, 240 (1990). Dr. Rowen has made no effort on this front. Moreover, even if a portion of the tax debt at issue here were barred by the period of limitations on collection, unless that portion reduces Dr. Rowen's balance below $51,000, it would not affect the correctness of the Commissioner's certification. Again, neither Dr. Rowen's pleadings nor his summary judgment motion provides any clue as to the amount of his tax debt that is no longer collectible.

Finally, the administrative record confirms that there is no basis for Dr. Rowen's limitations period speculation. The administrative record includes certified Forms 4340, Certificate of Assessments, Payments, and Other Specified Matters,[11] for Dr. Rowen's tax years 1994, 1996, 1997, and 2003 through 2007.

---

[11]A Form 4340 is a certified record of assessments relating to a particular taxpayer for a particular tax year. As a certified record, it is "presumptive evidence that a valid assessment of tax has been made" and "where the taxpayer can point to no evidence of any irregularity * * * the presumption of a valid assessment remains intact." Lunsford v. Commissioner, 117 T.C. 183, 187-188 (2001); see also Buaiz v. United States, 521 F. Supp. 2d 93, 96 (D.D.C. 2007) ("A certified transcript (Form 4340) reflecting an assessment is presumptive proof of the taxpayer's

(continued...)

These and other documentation in the record show that the period of limitations on collection remains open for all relevant years.

Based on the foregoing, we conclude that the Commissioner is entitled to a ruling in his favor with respect to Dr. Rowen's limitations claim.

B.     No Error in Certification of Seriously Delinquent Tax Debt

With Dr. Rowen's constitutional objections and the preliminary matters out of the way, we turn next to the specific requirements of section 7345 and "determine whether the certification was erroneous." Sec. 7345(e)(1). As noted above, generally, an action is "erroneous" if it is "inconsistent with the law or the facts." Black's Law Dictionary 659 (10th ed. 2014). We therefore consider whether the requirements of the statute were satisfied in Dr. Rowen's case. (We note that Dr. Rowen offers no argument to the contrary.)

When the Commissioner made the section 7345 certification, Dr. Rowen owed at least $474,847 relating to tax years 1994, 1996, 1997, and 2003 through 2007.[12] For all years at issue, the IRS issued to Dr. Rowen notices of Federal tax lien filing or notices of intent to levy. Dr. Rowen had an opportunity to seek

_____

[11](...continued)
liability and establishes the Government's prima facie case." (citing Brounstein v. United States, 979 F.2d 952, 954 (3d Cir. 1992))).

[12]In general, interest continues to run on a tax debt until it is paid. Sec. 6601.

review in this Court for all years at issue, and he in fact did seek review for tax years 2003 through 2007. This Court sustained the Commissioner's determinations for those years. For all other years, Dr. Rowen's right to such review in this Court has lapsed. There is nothing in the record to prove that Dr. Rowen has entered into an agreement to pay his liabilities pursuant to either section 6159 or section 7122 or requested relief under section 6015. Taken together, these facts establish that Dr. Rowen falls squarely within the definition, and outside the exceptions, set forth in section 7345(b) for a taxpayer owing a seriously delinquent tax debt. Consequently, we conclude that the Commissioner did not err in certifying Dr. Rowen's seriously delinquent tax debt.

Because the record supports the Commissioner's certification of Dr. Rowen as owing a seriously delinquent tax debt within the meaning of section 7345(b), we conclude that the Commissioner is entitled to summary judgment.

V.   Conclusion

In light of the discussion above, we will deny Dr. Rowen's motion for summary judgment and grant the Commissioner's cross-motion for summary judgment.

To reflect the foregoing,

<u>An appropriate order and decision</u>

<u>will be entered</u>.

Reviewed by the Court.

FOLEY, GALE, GUSTAFSON, PARIS, MORRISON, KERRIGAN, BUCH, NEGA, PUGH, ASHFORD, URDA, COPELAND, JONES, GREAVES, MARSHALL, and WEILER, <u>JJ</u>., agree with this opinion of the Court.

MARVEL, J., concurring: The opinion of the Court decides the issues raised in the motions for summary judgment by focusing on the unique facts and the literal arguments presented by the parties. I concur in the result--particularly given that no adverse action with respect to Dr. Rowen's passport has been taken yet as a result of the section 7345 certification. I write separately to point out that the opinion of the Court does not foreclose a constitutional challenge, in a future case with appropriate facts and squarely presented arguments, to the entire tax collection mechanism created by the Fixing America's Surface Transportation Act (FAST Act), Pub. L. No. 114-94, sec. 32101, 129 Stat. at 1729, pursuant to the jurisdiction granted in section 7345(e)(1).

Congress enacted section 7345 as one part of the interdepartmental tax collection mechanism created by FAST Act sec. 32101. That interdepartmental tax collection mechanism comprises two parts: (1) certification of a taxpayer's seriously delinquent tax debt under section 7345 and (2) an adverse passport action that can take the form of either a discretionary revocation of an existing passport or the mandatory denial of a passport application or renewal. Certification has no other function than to open the door to an adverse passport action, and an adverse passport action cannot occur unless and until the certification of a taxpayer's seriously delinquent tax debt.

Only one provision of FAST Act sec. 32101 authorizes judicial review that waives sovereign immunity with respect to the tax collection mechanism it creates: section 7345(e). Section 7345(e)(1) confers jurisdiction on this Court and the District Courts to "determine whether the certification was erroneous", and it provides that this Court or the appropriate District Court shall exercise "sole jurisdiction" over a taxpayer's claims relating to certification. Congress immunized the Secretary of Treasury and the Secretary of State from any liability relating to their actions under FAST Act sec. 32101. FAST Act sec. 32101(e)(3) (codified at 22 U.S.C. sec. 2714a(e)(3) (2018)).

Dr. Rowen raised issues challenging the constitutionality of FAST Act sec. 32101 in substance but phrased them as challenges to section 7345. The opinion of the Court has chosen to analyze and decide those issues with respect to section 7345 only. Because Dr. Rowen's arguments are not a model of precision, I agree that the approach taken in the opinion of the Court is reasonable. Dr. Rowen is the master of his claims, and it is fair to hold him to his words.

The structure and wording of FAST Act sec. 32101 suggests, however, that a question remains regarding the scope of the jurisdictional grant in section 7345(e). If the tax collection mechanism of FAST Act sec. 32101 results in an adverse passport action such as the revocation of an existing passport or the refusal to

renew a passport, a constitutional challenge to the entire tax collection mechanism of FAST Act sec. 32101 is likely; and the arguments by the affected taxpayer about the impairment of his right to international travel are not so easily avoided.[1]

Because the opinion of the Court has treated Dr. Rowen's constitutional challenge as one directed only to section 7345 and because Dr. Rowen's passport has not yet been revoked, the opinion of the Court should be read narrowly and

---

[1]In fact, similar arguments have been made in cases where an adverse passport action has already occurred and those claims are pending in other courts. See Jones v. Mnuchin, No. 21-10816 (11th Cir. filed Mar. 8, 2021); see also Maehr v. U.S. Dep't of State, No. 20-1124 (10th Cir. filed Mar. 26, 2020). In at least one of those cases the Department of Justice has been consistent at both the trial level and the appellate level that sec. 7345(e) provides the applicable waiver of sovereign immunity--even for constitutional challenges--arguing that if the statute were unconstitutional, then the certification would be "erroneous" within the meaning of sec. 7345(e). See United States' Partial Objection to Magistrate's Report and Recommendation at 2, Maehr v. U.S. State Dep't, No. 1:18-cv-02948 (D. Colo. filed Oct. 10, 2019) ("This entire case arose because of 26 U.S.C. § 7345, in the Internal Revenue Code, and § 7345(e) provides a waiver. * * * If the regime were unconstitutional, * * * certification would presumably be improper or illegal, i.e., 'erroneous.'"); Brief for the Appellee at 5, Maehr v. U.S. Dep't of State, No. 20-1124 (10th Cir. filed July 22, 2020) ("The Government stands by its position below that the District Court had jurisdiction under 28 U.S.C. § 1331 and that I.R.C. § 7345(e) provided the applicable waiver of sovereign immunity."); see also Defendants' Consolidated Reply in Support of Defendants' Motion for Summary Judgment and Response to Plaintiff's Cross-Motion for Summary Judgment at 17-24, Jones v. Mnuchin, No. 1:19-cv-00222 (S.D. Ga. filed July 1, 2020) (arguing the merits of the taxpayer's substantive due process challenge to the certification regime in a case filed pursuant to sec. 7345(e) and further for the dismissal of all named officials as defendants on the grounds that the only proper party to the suit is the United States pursuant to the terms of the applicable waiver of sovereign immunity found in sec. 7345(e)(1)).

does not foreclose a broader constitutional challenge to FAST Act sec. 32101 in an appropriate case brought under section 7345(e).