UNITED STATES of America,
Appellee,

v.

TDC MANAGEMENT CORPORATION,
INC. and T. Conrad Monts,
Appellants.

No. 01–5150.

United States Court of Appeals,
District of Columbia Circuit.

Argued March 8, 2002.

Decided May 3, 2002.

Before: GINSBURG, Chief Judge, ROGERS and GARLAND, Circuit Judges.

Opinion for the Court filed by Circuit Judge ROGERS.

ROGERS, Circuit Judge:

This case is before the court for a second time. In the first appeal, the court reversed in part the grant of summary judgment to TDC Management Corporation, Inc. and its president, Theodore Monts. The court held that the decision of the Department of Transportation Board of Contract Appeals ("the Board") on TDC's appeal from cost disallowances collaterally estopped the government from relitigating the accuracy of TDC's monthly progress and expenditure reports, but did not estop the government from bringing False Claims Act charges based on information that was omitted from those reports. *United States v. TDC Mgmt. Corp.,* 24 F.3d 292 (D.C.Cir.1994) (*"TDC I"*). In this second appeal, from the grant of summary judgment to the government, TDC contends correctly that the district court erred by granting preclusive effect to factual findings by the Board. This contention is waived, however, because TDC did not raise it in the district court and no occasion is presented for the exercise of our discretionary review in order to prevent a manifest injustice. Accordingly, because TDC's other challenges are unpersuasive, we affirm.

Stephen L. Braga argued the cause for appellants. With him on the briefs was Mark A. Miller.

Michael D. Taxay, Attorney, U.S. Department of Justice, argued the cause for appellee. With him on the brief were Roscoe C. Howard, Jr., U.S. Attorney, Douglas N. Letter, and Michael F. Hertz, Attorneys, U.S. Department of Justice.

## I.

The background to this appeal appears in *TDC I.* Suffice it to say, the litigation arose in connection with a Demonstration Bonding Program ("Program") of the Urban Mass Transit Authority ("UMTA") of the Department of Transportation. The Program was designed to assist minority enterprises in securing bonding from sure-

ties when bidding on large transportation construction projects. *TDC I,* 24 F.3d at 294. TDC agreed to identify private investors willing to provide collateral and management assistance to the minority enterprises in return for a share of the profits; for its part, UMTA agreed to match the collateral that investors provided. *Id.* By the terms of the Program, TDC was to serve as ombudsman between the parties, with no financial interest in Program operations. *Id.* On July 6, 1983, TDC and UMTA entered into a cost-reimbursement contract in which TDC was to use its "best efforts" to locate investors and sureties and obtain their tentative agreement to participate in the Program. *Id.* at 296.

When the Program failed to progress as expected, UMTA terminated the contract for convenience and disallowed nearly half of TDC's claimed contract-related expenses, which totaled $928,916. *Id.* at 296. TDC appealed to the Board. Before the Board rendered its decision, the United States in May 1989 sued TDC under the False Claims Act, 31 U.S.C. § 3729 (1982), for misrepresenting its actual progress in its monthly reports to UMTA and concealing deviations from the Program terms. *Id.* The Board ruled in TDC's favor and reversed the disallowances, finding that TDC had not breached the contract for nonperformance and that its monthly reports had notified UMTA of the categories and types of expenses that UMTA sought to disallow. *Id.* Viewing its jurisdiction under the Contract Dispute Act, 41 U.S.C. § 605, as limited to the costs that had been disallowed by the contracting officer, the Board declined to consider UMTA's claim that TDC was not entitled to any monies under the contract due to fraudulent omissions. *Id.* at 295. The Board's decision was affirmed by the United States Court of Appeals for the Federal Circuit. *Skinner v. TDC Mgmt. Corp.,* 975 F.2d 869 (Fed.Cir.1992) (unpublished order).

Based on the collateral estoppel effect of the Board's findings, TDC moved on April 19, 1991, for summary judgment on the False Claims Act charges. *TDC I,* 24 F.3d at 294. The district court granted the motion on August 17, 1992. Following a partial reversal by this court in *TDC I* on June 3, 1994, the district court on remand granted the government's motion for summary judgment on March 29, 2000, and on February 6, 2001, awarded the government damages. On April 10, 2001, the district court denied TDC's motion and granted the government's cross-motion, pursuant to Fed.R.Civ.P. 60, to clarify or correct the judgment.

## II.

On appeal, TDC challenges the grant of summary judgment on several grounds, only one of which requires extended discussion. That contention is that the district court relied on an erroneous application of the doctrine of collateral estoppel.

## A.

On remand, the district court ruled that collateral estoppel prevented TDC from relitigating factual issues decided by the Board with regard to omissions in TDC's monthly reports because "the issue of omissions was squarely addressed by the Board in its prior review of the contract termination." *Remand Opinion* at 7. Relying on the Board's findings, the district court concluded there were no genuine issues of fact with regard to the alleged omissions. *Id.* at 14. The district court recited at length the Board's findings that TDC had departed from the terms of the Program by, *inter alia*: (1) planning to use interest generated by short-term investment of the UMTA contribution to underwrite the costs of providing services to disadvantaged business enterprises; (2)

proposing to investors that such businesses be charged a 3% fee for management services; and (3) intentionally failing to disclose to UMTA its plans to hold a financial stake in Program operations in order to keep UMTA from learning of activities that it would insist be terminated; and that with such investment TDC could no longer act objectively as ombudsman for the Program. On the basis of the Board's findings, the district court concluded that the omissions were either intentional or resulted from reckless disregard of the Program terms, causing the monthly reports submitted by TDC in support of its invoices for payment to be false. In granting summary judgment to the government on liability, the district court also relied on the unrebutted declarations of UMTA officials, including that of UMTA Administrator Ralph L. Stanley stating that had he known that TDC or Monts tried to obtain an equity stake or other financial interest in the Program, he would have directed that the contract be immediately terminated for cause. The district court thus found that the omissions were material because had UMTA known of the omitted information, it would have either required TDC to cease those activities or terminated the contract for cause. *Id.* at 15.

▮ In *TDC I*, this court explained that a party is not collaterally estopped from relitigating a disputed issue of fact unless that issue "was actually litigated and necessarily decided by a final disposition on the merits." 24 F.3d at 295; *see also Nasem v. Brown*, 595 F.2d 801, 805 (D.C.Cir.1979); 18 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 4421 (1981); *id.* § 4475 at 764–70. Or, as stated in the Restatement (Second) of Judgments § 27 (1982), a prior determination can only preclude relitigation of the same issue if it was "essen-

tial to the [prior] judgment." TDC prevailed before the Board and was awarded $778,613 for expenses incurred under the contract. *TDC I*, 24 F.3d at 294. The Board found that "[t]here [was] no evidence in the record that the Program failed for any reason other than [UMTA] electing not to fund the balance of the contract, but to terminate TDC's performance." *Board Opinion* at 133. Thus, TDC maintains, the Board's findings regarding the omissions in TDC's progress reports were not necessary to the result that the Board ultimately reached, and a factual finding by the Board that is adverse to the prevailing party cannot be "essential to the judgment" because by definition it could not have affected the outcome of the case. TDC contends, therefore, that in considering TDC to be bound by the Board's findings regarding the omissions, the district court plainly erred.

In *TDC I,* this court stated that the Board "expressly reserved for the district court the legal determination of whether TDC's failure to report its financial stake in Program operations constituted fraud," and that "[i]n disposing of TDC's contract claim, the Board made no necessary findings about UMTA's reliance on TDC's reports." *TDC I*, 24 F.3d at 296. Notwithstanding the instruction in *TDC I* and what TDC now correctly contends is clear error by the district court, TDC did not alert the district court to its error. On remand, TDC never argued that it should not be precluded from relitigating UMTA's reliance on the omissions because those findings were not necessary to the Board's decision. Rather, as the district court noted, in opposing the government's motion for summary judgment TDC "fail[ed] to address, let alone dispute, the collateral estoppel effect of the [Board's] opinion with regards to omissions from its monthly reports to UMTA. Instead, TDC sug-

gest[ed] that the False Claims Act claim based on omissions [wa]s a new claim which require[d] further discovery." *Remand Opinion* at 6. Nor in its motion for clarification under Rule 60 did TDC argue that the district court's collateral estoppel ruling as to the omissions was erroneous. On appeal, TDC points to nothing that would indicate that it presented an appropriate objection in the district court. TDC suggests, for example, that in opposing the government's motion for summary judgment, TDC identified several factual issues relating to the omissions that would be inconsistent with the application of collateral estoppel; again, however, the record shows that TDC was addressing the issue of whether TDC's omissions were material, i.e., whether UMTA relied on TDC's monthly reports, and not whether it was appropriate to afford collateral estoppel effect to the Board's findings. To the extent that TDC now focuses on the salient error, it argues that the issue of collateral estoppel *vel non* was placed squarely before the district court in the government's motion for summary judgment. But as the district court's opinion makes clear, this is hardly the same as joining the government's argument on collateral estoppel. TDC itself moved for summary judgment on the basis of the collateral estoppel effect of the Board's findings; further, it argued in opposing the government's calculation of damages that collateral estoppel operated in TDC's favor, on the ground that the Board had already determined the government could not prove that TDC's actions were the proximate cause of the Program's demise. Thus, far from challenging the district court's application of collateral estoppel in its liability determination, TDC's argument reinforced the notion that the district court's invocation of the doctrine was appropriate. TDC's reliance on *Butera v. District of Columbia*, 235 F.3d 637, 645 n.

6 (D.C.Cir.2001), and *AFGE v. FLRA*, 841 F.2d 1165, 1168 (D.C.Cir.1988), is misplaced; in *Butera*, the court addressed only those issues raised in the district court, and in *AFGE* the court bound the FLRA to the implicit premise of its argument in the district court. Here, by contrast, TDC neither explicitly nor implicitly raised a "necessity" argument in the district court. We hold that TDC, therefore, has waived the contention that the district court erred in ruling that TDC was precluded from relitigating UMTA's reliance on the omissions in TDC's monthly reports.

## B.

The question remains whether this court should exercise its discretion to consider TDC's contention notwithstanding its waiver. In *District of Columbia v. Air Florida*, 750 F.2d 1077 (D.C.Cir.1984), the court stated the general rule: "It is well settled that issues and legal theories not asserted at the District Court level ordinarily will not be heard on appeal." *Id.* at 1084–85. The Supreme Court has long instructed, however, that appellate courts must "not lose sight of the fact that such appellate practice should not be applied where the obvious result would be a plain miscarriage of justice." *Hormel v. Helvering*, 312 U.S. 552, 558, 61 S.Ct. 719, 722, 85 L.Ed. 1037 (1941). In *United States v. Atkinson*, 297 U.S. 157, 56 S.Ct. 391, 80 L.Ed. 555 (1936), the Supreme Court described "exceptional circumstances" when appellate courts on their own motion may, in the public interest, "notice errors to which no exception has been taken, if the errors are obvious, or if they otherwise seriously affect the fairness, integrity, or public reputation of judicial proceedings." *Id.* at 160, 56 S.Ct. at 392.

This court thus acknowledged in *Air Florida* that in "exceptional circumstances,

where injustice might otherwise result, we have the discretion to consider questions of law that were neither raised below nor passed upon by the District Court." 750 F.2d at 1085. In that case, reviewing dismissal of a complaint for failure to state a cause of action, the court declined to exercise its discretion because to do so would have engaged the court in deciding whether to create new federal common law where the United States was not a party to the case and Congress may have preempted some or all of the field. *Id.* at 1085–86. On the other hand, in *Mulligan v. Andrews,* 211 F.2d 28 (D.C.Cir.1954), the court exercised its discretion to depart from the general rule; in that case the loss of the plaintiff's livelihood was at issue due to what he claimed was his unlawful removal from the classified Civil Service, and the court deemed that an "injustice might otherwise result" if the court did not consider whether his employer had failed to comply with the statutory requirement that written reasons be given for his removal. *Id.* at 29.

■ TDC accordingly asserts in its brief that "[s]omething went horribly wrong here to turn this case upside down from [the] point" where TDC prevailed before the Board, and "it is up to this Court to correct that wrong." Appellant's Br. at 16. In support of its position, TDC makes two arguments why this court should address its collateral estoppel contention: first, the issue is purely a question of law subject to *de novo* review; and second, "the district court's error was plain — if not egregious," as the overwhelming weight of authority demonstrates that collateral estoppel operates in only one direction. Reply Br. at 14. However, these reasons sweep far too broadly and address only some of the relevant considerations. Neither of TDC's arguments necessarily demonstrates that a manifest injustice will

occur unless this court addresses the "necessity" of the Board's findings to its holding and remands the case for a trial. Although TDC's counsel may have failed to alert the district court to an obvious error, we decline to exercise our discretion for three reasons.

First, culpability. The False Claims Act complaint alleged that TDC's reports overstated its progress and failed to disclose that, contrary to the Program terms, TDC sought to obtain a financial interest in Program operations. *See TDC I,* 24 F.3d at 294. "The withholding of such information — information critical to the decision to pay — is the essence of a false claim." *Ab-Tech Constr., Inc. v. United States,* 31 Fed. Cl. 429, 434 (1994). TDC does not contest that certain information was not included in its progress reports and that some of the omitted information would have revealed that TDC was proposing to take an investor position in the Program. TDC thus defrauded the government by presenting reports in support of payment that omitted information indicating that it was acting in a manner that was contrary to the core terms of the Program. Although TDC contends there are material disputed issues regarding, for example, UMTA's failure to make reasonable inquiries into TDC's activities, changes that UMTA made to the Program ·midstream, and the source of the proposals that TDC take equity stakes in the joint ventures with private investors, the record evidence remains dispositive. Likewise, TDC's contention that it could not execute final agreements with investors or sureties because only UMTA had that authority under the terms of the Program is unavailing. TDC sought payment in connection with its efforts to obtain agreements that were contrary to Program terms. The undisputed evidence shows there were omissions that UMTA officials deemed to be material, and TDC presented no evi-

dence to dispute UMTA Administrator Stanley's declaration that he would have immediately terminated the contract had he been aware of TDC's unreported activities.

Second, prejudice to the government. The considerable delay in this litigation creates problems with regard to witnesses' memories and document retention regarding events that occurred almost two decades ago. These problems would presumably affect both parties at a trial. But they are exacerbated for the government, for at oral argument the parties informed the court of the death of Ralph L. Stanley. Stanley's term as UMTA Administrator, from November 21, 1983 to May 31, 1987, spanned the period just after the Program's inception in July 1983 until its termination in April 1985. He was directly in charge of what he described in his April 1996 declaration as a "high priority project," and he claimed in his declaration that he first learned at meetings with Monts and TDC's legal consultant in December 1984 and January 1985 that TDC was deviating from the Program in significant ways. Although other UMTA officials were involved in the management of the Program, Stanley was the person in charge and, due to his death, there would be obvious prejudice to the government at a trial.

Third, TDC recovered its contract costs. Pursuant to the Board's decision, TDC recovered $778,613 of the $928,916 that it claimed over the life of the contract as "allowable, allocable, and reasonable" costs associated with its work on the Program. *TDC I,* 24 F.3d at 294; *see Skinner,* 975 F.2d 869. Our holding does not disturb this result. Rather, any False Claims Act damages awarded to the government "would merely offset the payments to which the Board ... has already determined TDC is entitled under the terms of

its UMTA contract." *TDC I,* 24 F.3d at 298. Under the version of the False Claims Act then in effect, the government recovered as damages a civil penalty of $2,000 for each false claim plus twice the amount of damages sustained as a result of the false claim and costs. 31 U.S.C. § 3729 (1982); *see also TDC I,* 24 F.3d at 298. The district court found that TDC filed 18 false payment vouchers due to material omissions from January 4, 1984, until the Program's termination, and entered judgment against TDC in the amount of $1,285,198.31: doubling the $621,466.11 in vouchers paid by the government plus $36,000 in penalties and $6,266.09 in costs. Hence, although TDC will owe money to the government, it does not face an exacerbated "triple" penalty, i.e., the loss of its contract costs over and above what it owes as damages under the False Claims Act.

In sum, in light of the undisputed record evidence of TDC's culpability, the prejudice to the government, and TDC's recovery of its contract costs, remanding for a trial would simply prolong the closure date of this litigation without, in all likelihood, advancing the interests of either party. Accordingly, we decline to exercise our discretion to address the collateral estoppel contention that TDC waived.

### III.

We address briefly TDC's two other contentions, regarding damages and Monts' liability.

### A.

TDC contends that in light of the Board's ruling, the government's net damages were zero because it "got what it paid for" under the "best efforts" agreement. TDC further contends that the government failed to prove that TDC proximately caused its damages because it may have

terminated the contract for reasons unrelated to the omissions in the progress reports, and that at the very least, an evidentiary hearing into the causation issue was required. These claims are meritless.

The Supreme Court pointed out long ago that "the chief purpose of the statutes [which formed the basis for the False Claims Act] ... was to provide for restitution to the government of the money taken from it by fraud, and that the device of double damages plus a specific sum was chosen to make sure that the government would be made completely whole." *United States ex rel. Marcus v. Hess,* 317 U.S. 537, 551–52, 63 S.Ct. 379, 388, 87 L.Ed. 443 (1943). In *United States ex rel. Schwedt v. Planning Research Corp.,* 59 F.3d 196, 200 (D.C.Cir.1995), this court stated that if the government can show it relied on representations in a contractor's progress reports in deciding to make payments, "those payments may constitute damages under the Act." TDC relies on *United States v. Bornstein,* 423 U.S. 303, 317 n. 13, 96 S.Ct. 523, 531 n. 13, 46 L.Ed.2d 514 (1976), holding that the government is entitled to receive damages "equal to the difference between the market value [of the item] it received and retained, and the market value it would have received if they had been of the specified quality." The Program at issue, however, did not call for TDC to produce a tangible structure or asset of ascertainable value, as occurred in *Ab-Tech Construction, Inc. v. United States,* 31 Fed. Cl. 429 (1994), and *United States v. Woodbury,* 359 F.2d 370, 379 (9th Cir.1966). Rather, the evidence allowed the district court to find that the value of the "best efforts" provided by TDC was vitiated by TDC's fraudulent concealment of its rent-seeking behavior. Once TDC deviated from its contracted role as impartial ombudsman by seeking a financial stake in joint ventures with private investors and by charging fees for the provision of material assistance to minority entrepreneurs, the district court then could properly find that the Program no longer had any value to the government. *Cf. United States ex rel. Compton v. Midwest Specialties, Inc.,* 142 F.3d 296, 304 (6th Cir.1998).

■ TDC's contention that the government terminated the contract for convenience and failed to prove that TDC's omissions proximately caused its damages is also unavailing. UMTA initially terminated the contract for convenience but changed this to a termination for cause after learning about the omissions in TDC's progress reports. No court has ever found the termination for cause to be unwarranted. Further, TDC failed to rebut the declarations of UMTA officials that UMTA relied on TDC's monthly reports and would not have continued to make payments on TDC's vouchers but for the omissions. TDC's alternative contention that the district court erroneously characterized the question of materiality by failing to ask whether UMTA officials would have acted differently if the omitted information had been included in the reports, as opposed to whether they knew of such information, was not raised in the district court and is not properly before this court. *See Air Florida,* 750 F.2d at 1084–85. Under the circumstances, there was no genuine issue of fact regarding causation and reliance, nor any need for an evidentiary hearing. Thus, TDC fails to show that the district court erred in adopting a "but for" measure of damages, based on what the government would have paid out had it known of the information that TDC omitted from its monthly progress reports.

## B.

■ Finally, TDC's contention that the district court improperly extended the judgment to include Monts as a defendant

is frivolous. The government sued both TDC and Monts as named defendants. *TDC I,* 24 F.3d at 294. In granting the government's motion for summary judgment as to liability, the district court in its March 2000 memorandum opinion and order referred only to TDC and neglected to mention Monts by name. However, in its February 2001 memorandum opinion awarding damages, the district court referenced its March 2000 memorandum and order on liability as granting summary judgment "against defendants TDC Management Corporation ('TDC') and T. Conrad Monts." Further, in granting the government's cross-motion in response to TDC's Rule 60 motion, the district court stated that the final judgment applied to both TDC and Monts, "each of whom shall be jointly and severally liable to the United States."

Accordingly, we affirm the grant of summary judgment to the government.